Lillian SOFKA, Plaintiff-Appellant,

v.

Eugene J. THAL, Estelle B. Thal d/b/a Abbey Furniture Company, a partnership, and Abbey Furniture and Appliance Center, Inc., and G.F.C. Corporation of Missouri, Defendants-Respondents.

No. 64696.

Supreme Court of Missouri,
En Banc.

Dec. 20, 1983.

Rehearing Denied Jan. 17, 1984.

Ernest L. .Keathley, Jr., St. Louis, for plaintiff-appellant.

Irvin A. Friedman, Theodore J. MacDonald, Jr., William G. Guerri, William P. Durbin, Jr., Robert Herman, St. Louis, for defendants-respondents.

RENDLEN, Chief Justice.

Plaintiff appeals trial court order dismissing her fraud and nuisance claims against defendants Thal and Abbey Furniture and Appliance Center, Inc. and order granting summary judgment for defendant G.F.C. Corporation of Missouri (hereinafter GFC) on her invasion of privacy claim. The cause, transferred from the Court of Appeals on plaintiff's application, will be decided as though on original appeal.

## FRAUD AND NUISANCE CLAIMS

Counts I and II of plaintiff's Third Amended Petition, contained the following allegations. At all pertinent times defendants Thal were partners in the operation of a furniture store, called Abbey Furniture Company, and also officers and employees of Abbey Furniture and Appliance Center, Inc., doing business at the same address. In May, 1976, plaintiff went to defendants' furniture store and told defendant Eugene J. Thal (hereinafter Thal) that she wished to purchase a certain four-piece French Provincial bedroom suite consisting of dresser, mirror, chest and *solid-wood* headboard. Each of the pieces was in defend-

ant's store and available for delivery, except the solid-wood headboard, which Thal told plaintiff "was at Defendants' warehouse and would be delivered to her with the dresser, mirror and chest." Unknown to plaintiff, Thal made this representation knowing it was false, or not knowing whether it was true or false and intending to induce plaintiff's purchase of the furniture. Plaintiff would not have purchased the furniture without the solid-wood headboard, but relying on Thal's representation, she contracted to buy the set for $511.99, made a down payment of $369.00 and agreed to pay $142.99 after delivery of the headboard. A day later, the correct chest, mirror and dresser were delivered, but instead of the solid-wood headboard plaintiff ordered, a woven headboard arrived. Dissatisfied, she telephoned Thal, who told her then and repeatedly thereafter that a mistake had been made and the solid-wood headboard would be delivered. During the ensuing weeks and months, Thal also told plaintiff the headboard was in various stages of order, construction, shipment, storage and delivery and would be delivered in two weeks, then an additional five to six weeks, then another two weeks. Subsequently, he reported the furniture manufacturing plant was on vacation, had been damaged by fire, slowed by strike and had sent the wrong headboard. Thal knew these representations were also false, or he did not know whether they were true or false, and intended in making them that plaintiff, who was unaware of their falsity would be induced to keep the furniture and refrain from cancelling the order. Had plaintiff known these representations were false, she would have cancelled the order and directed defendants to pick up the furniture and return the money paid, but relying on these misrepresentations, and acting in a manner reasonably contemplated of her, plaintiff retained the furniture, refrained from cancelling the order and awaited delivery of the solid-wood headboard. Because of her position as defendant's customer in this transaction and Thal's superior knowledge of the pertinent circumstances, plaintiff had a right to rely on his representations as being true. The furniture has not been used and defendants have not removed it from plaintiff's home. As a direct and proximate result of Thal's initial misrepresentation, plaintiff alleged she was induced to enter the contract and damaged thereby. As a direct and proximate result of Thal's post-sale misrepresentations, plaintiff alleged she was forced to keep and store unwanted furniture on her premises, causing additional damage.

In Count III, plaintiff alleged the following. Despite Thal's failure to perform, he "intentionally, purposefully, unlawfully and wrongfully" assigned to GFC, a commercial loan company the $142.99 remaining to be paid under plaintiff's contract. Thal knew plaintiff had not and in all likelihood would not pay until he delivered the headboard but intended in assigning the contract that GFC collect by whatever means it could. When Thal made this assignment, he knew plaintiff worked at night, slept during the day and that GFC would attempt to collect by calling plaintiff during the hours she was asleep. GFC in fact made repeated telephone calls to plaintiff during her normal sleeping hours, awakening her and disturbing her sleep. Knowing what GFC would do to attempt collection, Thal was unreasonable and abusive in assigning the contract, and such assignment was a direct and proximate cause of the telephone calls to plaintiff by GFC, which constituted a nuisance. The calls repeatedly interrupted plaintiff's sleep, causing her to suffer insomnia and become irritable, fatigued, dull and listless, which diminished her work efficiency, all to her damage of $10,000.

In Counts IV, V and VI, plaintiff alleged that all of defendants' tortious acts were committed unlawfully, intentionally, willfully and wantonly and prayed punitive damages.

Defendants' motion to dismiss on the ground that "[p]laintiff's Third Amended Petition, and all Counts thereof, fail to state a claim upon which relief may be granted against defendants" was sustained. Plaintiff appeals, contending first that the circuit court erred in dismissing her Third

Amended Petition because defendants' motion failed to specify with particularity the alleged defects in her petition, and the petition was sufficient to state claims against defendants Thal and Abbey Furniture and Appliance Center, Inc. for fraud and nuisance.

These contentions first require analysis of our Rule 55.26(a):

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, *shall state with particularity the grounds therefor,* and shall set forth the relief or order sought.... (Emphasis added.)

Prior to the effective date of Missouri's Civil Code, January 1, 1945, pretrial objection that a petition failed on its face to state facts sufficient to constitute a cause of action was properly raised by demurrer. Section 922, RSMo 1939 (substance enacted in 1848).[1] Section 923, RSMo 1939, the substance of which was enacted in 1848,[2] further provided, "The demurrer shall distinctly specify the grounds of objection to the pleadings. Unless it does so, it may be disregarded." A demurrer on ground "the petition does not state a cause of action," however, was deemed sufficiently specific to meet the requirement of this statute. *Wilson v. Polk County,* 112 Mo. 126, 20 S.W. 469, 471 (1892); *Morgan v. Bouse,* 53 Mo. 219, 221 (Mo.1873).

■ On January 1, 1945, §§ 922 and 923, RSMo 1939, were repealed and the demurrer abolished, Section 59, 1943 Mo.Laws 374; the motion to dismiss for failure to state a claim, when such defect appears on the record, now fills the role of the demurrer. *Baysinger v. Hanser,* 355 Mo. 1042, 199 S.W.2d 644, 645–46 (1947); *State ex rel. Uthoff v. Russell,* 210 S.W.2d 1017, 1022 (Mo.App.1948). The substance of Section 923, RSMo 1939, as well as § 964, RSMo 1939, requiring specificity in motions, have been capsulized in present Rule 55.26(a). In adopting this Rule, there was no intent to change the prior law that a motion to dis-

miss for failure to state a claim upon which relief can be granted is sufficiently specific to raise the objection. A more stringent interpretation would impose on defendant the burden of negating every possible claim plaintiff might seek to advance.

Plaintiff cites *Wampler v. Atchison, Topeka & Santa Fe Ry. Co.,* 269 Mo. 464, 190 S.W. 908 (1916); *State ex rel. Kansas City Exchange Co. v. Harris,* 229 Mo.App. 721, 81 S.W.2d 632 (1935) and *McGuire v. Bode,* 607 S.W.2d 165 (Mo.App.1980). Suffice it to say that as none of those cases involved a motion to dismiss for failure to state a claim, none is authority for plaintiff's point. Defendants' motion was sufficiently particular to comply with Rule 55.-26(a), and the court did not err in failing to overrule it on that ground.

Plaintiff next contends the trial court erred in dismissing her Third Amended Petition as it sufficiently stated two claims of fraud and one claim of nuisance against defendants Thal and Abbey Furniture and Appliance Center, Inc. Examining the "fraud claims" of Count I and II to determine whether actionable claims are stated, we accept as true facts well pleaded and plaintiff is given the benefit of all fair implications therefrom. *Commercial Bank of St. Louis County v. James,* 658 S.W.2d 17, 21–22 (Mo. banc 1983).

■ The elements of fraud are: 1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity, or his ignorance of its truth, 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequent and proximately caused injury. *Ackmann v. Keeney-Toelle Real Estate Co.,* 401 S.W.2d 483, 488 (Mo. banc 1966).

As to Count I, plaintiff contends defendant Thal's representation that *the solid-wood headboard was at defendants' ware-*

---

**1.** Section 3, 1848–49 Mo. Laws 80.

**2.** Section 4, 1848–49 Mo. Laws 80.

*house* and would be delivered with the dresser, mirror and chest, was a representation of an existing fact sufficient to supply the first element of an action for fraud.

The pertinent allegations are that:

On or about May 7, 1976, . . . Plaintiff informed the Defendant Eugene J. Thal that she wished to purchase *a certain* French Provincial bedroom set of furniture consisting of a dresser with a mirror, a chest, and a *solid wood* headboard for Plaintiff's bed; *the* dresser, mirror and chest *were present at the store and available for delivery, but the solid wood headboard was not at the store.*

. . . . .

Defendant Eugene J. Thal, stated . . . to Plaintiff that *the* solid wood headboard, *which Plaintiff wanted, was at Defendants' warehouse* and *would be* delivered to her with the dresser, mirror and chest . . . .

. . . . .

Plaintiff relied on [this] . . . representation as being true and ordered the said bedroom set with solid wood headboard to be delivered to her home . . . .

. . . . .

Plaintiff would not have ordered or purchased the French Provincial bedroom set nor the dresser with mirror nor chest, if she *could not have had* the solid wood headboard *with those other pieces of furniture.*

(Emphasis added.)

Defendants argue Thal's representation that the solid-wood headboard *was* at defendants' warehouse and *would be* delivered with the dresser, mirror and chest, was not a representation of existing fact but merely a *promise to deliver* the headboard. Citing *Yerington v. Riss,* 374 S.W.2d 52 (Mo.1964) and numerous other cases, they contend a promissory statement is insufficient to support an action for fraud. This contention falls short of the mark.

▉ Clearly, Thal's representation was one of fact that the solid-wood headboard was in his possession and was then available

for delivery. The allegations are fairly susceptible of implication that Thal offered to sell plaintiff a certain French Provincial bedroom suite including solid-wood headboard then in his possession, that plaintiff accepted his offer and that her acceptance was induced by his representation that the bedroom suite including solid-wood headboard was then available for sale and delivery. This constitutes an allegation of misrepresented fact sufficient to withstand a motion to dismiss.

▉ The result would be the same if we were to follow defendants' urging and characterize Thal's statement as a promise. While the mere giving of a promise, though breached the following day, would not give rise to an action for tortious fraud, *McGuire v. Bode,* 607 S.W.2d 165, 167 (Mo.App.1980), a promise *accompanied by a present intent not to perform* is a misrepresentation of present state of mind, itself an existing fact, sufficient to constitute actionable fraud. *White v. Mulvania,* 575 S.W.2d 184, 188 (Mo. banc 1979). See also Restatement (Second) of Torts § 530. Plaintiff's allegations that Thal knew his statement was false when made, or knew he did not then know whether it was true or false, supports an inference that he either had no intention of performing the promise to deliver when it was made or made the promise in reckless disregard as to whether he could perform. Plaintiff's petition sufficiently alleges a factual representation, the first element of actionable fraud.

Defendants do not challenge the adequacy of the allegations to show the remaining elements of a fraud claim and, discerning no insufficiencies, we rule the trial court erred in dismissing Count I and Count IV, the corresponding claim for punitive damages, of plaintiff's Third Amended Petition.

▉ As to Count II, plaintiff asserts that Thal's subsequent misrepresentations regarding the status and delivery date of the wood headboard were new fraudulent representations sufficient to support an additional claim for fraud. Defendant argues Thal's statements that the headboard was in various stages of being ordered, con-

structed, shipped, stored or delivered were merely collateral to his initial and continuing promise to deliver the headboard and therefore not independently actionable. Here, too, defendants misconstrue the nature of plaintiff's complaint. Regardless of whether Thal's initial representation that the solid-wood headboard was in his possession was fraudulent, plaintiff alleges his subsequent statements were knowingly false or made without knowledge as to whether they were true or false, and for the purpose of inducing her to refrain from cancelling the contract in reliance on them. Such is a sufficient allegation of false representation to support an action for fraud. As no other defects are averred or apparent, we find the trial court erred in dismissing Count II and Count V, the corresponding claim for punitive damages, of plaintiff's Third Amended Petition.

It is next contended the trial court erred in dismissing plaintiff's claim for private nuisance (Count III). Though we again adopt a liberal construction of the averments and indulge all fair implications therefrom, we cannot here find a separate actionable claim.

■ Private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. Restatement (Second) of Torts § 821D (1977). However, the law does not concern itself with trifles, and there is liability for nuisance only to those whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose. Restatement (Second) of Torts § 821F (1977). By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance, Restatement (Second) of Torts § 821F comment c (1977), determined by the standard of normal persons or property in the particular locality. Restatement (Second) of Torts § 821F comment d (1977). If normal persons living in the community would regard the invasion as definitely offensive, seriously annoying or intolerable, it is significant. *Id.* If normal persons in the

locality would not be substantially annoyed or disturbed, the invasion is not significant, even though the idiosyncracies of the particular plaintiff may make it unendurable to him. *Id.* "Rights and privileges as to the use and enjoyment of land are based on the general standards of normal persons in the community and not on the standards of the individuals who happen to be there at the time." *Id.*

Though this is a close question, we are unable to infer from the allegations that plaintiff suffered a sufficient invasion of her interest in the use and enjoyment of her home to constitute a nuisance. The pertinent allegations are:

... Plaintiff worked at night and ... her normal sleeping hours were during the day.

.    .    .    .    .

... GFC made repeated telephone calls to Plaintiff during her normal sleeping hours and repeatedly awakened her, thus disturbing her rest, sleep and repose.

.    .    .    .    .

The said calls to Plaintiff by GFC constituted a nuisance ....

.    .    .    .    .

... said nuisance telephone calls repeatedly awakened Plaintiff from her sleep, repeatedly interrupted her sleep and caused her to suffer from insomnia and become irritable, fatigued, dull and listless ....

■ In determining the sufficiency of these allegations to show significant harm to plaintiff's interest, we disregard her legal conclusion the telephone calls "constituted a nuisance." *Royster v. Baker,* 365 S.W.2d 496, 500 (Mo.1963). We also disregard plaintiff's allegations the calls disturbed her sleep, because she does not allege, nor can we infer from plaintiff's awakening, that the sleep of the ordinary person would be disturbed by daytime telephone calls. A claim for private nuisance based on personal discomfort or annoyance requires allegation of an invasion that would be substantially offensive to the ordinary person and, in the absence of a direct

allegation, plaintiff's discomfort fails to demonstrate a significant invasion unless it can be inferred therefrom that her reaction would be shared by the person of ordinary sensibilities in the community. Because the offending calls were made during the day, no such inference is warranted here.

Finally, there remains the allegation that "GFC made repeated telephone calls to Plaintiff . . . ." Even if telephone calls might constitute a nuisance, an issue we need not reach here, a nuisance could not be said to occur until the number of calls or their frequency reached a highly offensive or intolerable level. The allegation of "repeated telephone calls" simply does not give rise to the essential inference that their number or frequency was great enough to seriously annoy a person of ordinary sensibilities in plaintiff's locality. Repeated telephone calls are an accepted feature of everyday life, and maintaining telephone service evidences the expectation if not the hope of calls from time to time.

We are aware of our numerous cases stating that a petition is not to be ruled insufficient merely because of lack of definiteness or uncertainty in the allegations or because of informality in the statement of an essential fact. *E.g. Merriman v. Caton*, 395 S.W.2d 106, 109 (Mo.1965); *In re Estate of Williamson*, 380 S.W.2d 333, 338 (Mo.1964); *Mathews v. Pratt*, 367 S.W.2d 632, 634 (Mo.1963); *Myers v. City of Palmyra*, 355 S.W.2d 17, 18 (Mo.1962); *Downey v. United Weatherproofing*, 363 Mo. 852, 253 S.W.2d 976, 978 (1953); *Zuber v. Clarkson Construction Co.*, 363 Mo. 352, 251 S.W.2d 52, 54 (1952); *Stephens v. Kansas City Gas Co.*, 354 Mo. 835, 191 S.W.2d 601, 603–4 (1946). In none of these cases, however, was a petition that contained neither allegation of an ultimate fact essential for recovery nor allegations from which such ultimate fact could be inferred ruled sufficient. While a petition shall be so construed as to do substantial justice, Rule 55.24, and tech-

nicalities are not to be used to ambush an adverse party, *Gerber v. Schutte Inv. Co.*, 354 Mo. 1246, 194 S.W.2d 25, 28 (1946), the pleading setting forth a claim for relief must contain a short and plain statement of the facts showing the pleader is entitled to relief. Rule 55.05. Significant harm to plaintiff's interest in the private use and enjoyment of land is an ultimate fact that must be pled and proved to sustain a private nuisance claim for damages, *see* M.A.I. 22.06 (1981). As plaintiff's petition falls short in this regard, plaintiff has not convinced us the trial court erred in dismissing Count III of her Third Amended Petition, or Count VI, the correlative claim for punitive damages.[3] Point overruled.

## INVASION OF PRIVACY CLAIM

For her final point plaintiff contends the trial court erred in sustaining GFC's motion for summary judgment on Counts V and VI of her First Amended Petition. Plaintiff asserts her claim against GFC is one for invasion of her right to privacy, i.e. "the right to be left alone." Relying on *Zimmerman v. Associates Discount Corp.*, 444 S.W.2d 396 (Mo. banc 1969), and *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892 (Mo.1959), GFC maintains that plaintiff failed to state a claim for invasion of privacy because the element of publicity is lacking; from plaintiff's own deposition testimony, it was established that GFC's communication with plaintiff consisted solely of telephone conversations with plaintiff alone.

An individual's right of privacy is legally protected, and violation of such right can under given circumstances provide an entitlement to relief. *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d at 895. As has been noted, however, "invasion of privacy" is a general term used to describe four different torts, each with distinct elements and each describing a separate interest that can be invaded, although

**3.** It should be noted that while the facts alleged in Count III do not invoke substantial principles entitling plaintiff to a separate right of action for nuisance, those factual allegations are material to her claims for actual and punitive damages stemming from the fraud claims in Counts I, II, IV and V of her Third Amended Petition.

the separate interests may, and often do, overlap. *See* Prosser, Handbook of the Law of Torts, § 117 (4th Edition 1971); *Corcoran v. Southwestern Bell Telephone Company,* 572 S.W.2d 212, 214 (Mo.App. 1978). The Restatement of Torts (Second) § 652A (1977) declares that the right of privacy is invaded when there is (1) unreasonable intrusion upon the seclusion of another; or (2) appropriation of the other's name or likeness; or (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public. We need not enumerate the elements of each type of "invasion of privacy," for plaintiff in her claim against GFC pleaded only an unreasonable intrusion upon her seclusion, one of the identifiable forms of the tort. We believe *Corcoran v. Southwestern Bell Telephone Co.,* 572 S.W.2d 212, 215 (Mo.App. 1978), is correct in its holding that publicity is not required to establish a tort on this theory. In accord, Restatement (Second) of Torts § 652B comment a (1977). This reflects the modern view, and the factual difference arguably distinguishes this claim from the form of the tort involved in *Biederman's of Springfield, Inc. v. Wright,* 322 S.W.2d 892 (Mo.1959). To the extent *Zimmerman v. Associates Discount Corp.,* 444 S.W.2d 396 (Mo. banc 1969), is construed as ruling that publicity is an essential element of tortious intrusion upon seclusion, it is not to be followed.

■ The claim asserted by plaintiff is defined in the Restatement (Second) of Torts § 652B:

> One who intentionally intrudes, physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

In support of its motion for summary judgment, GFC offered plaintiff's petition and deposition testimony. Neither party offered affidavits in support of or in opposition to the motion. The facts alleged in Counts V and VI of plaintiff's First Amended Petition against GFC for invasion of privacy were substantially those contained in Count III of her Third Amended Petition, discussed *supra,* against defendant Thal for nuisance, and we need not restate them here. On deposition, plaintiff testified that over a period of at least several months, she received a total of six or eight telephone calls from agents of GFC. The last call was received in February, 1977, but between November 1976 and February 1977, calls were infrequent. After plaintiff told the first caller she worked at night and that future calls should be made in the morning, she received three to five more afternoon calls. Each call awakened plaintiff and caused her to lose between two and three hours sleep. All of the calls were made to plaintiff's home and received between 10:00 a.m. and 5:00 p.m. Plaintiff lived alone and was the only person to answer the calls. The callers were more or less polite, and none raised his voice, "screamed" at plaintiff or threatened to sue her. None called her at work or threatened to tell her neighbors she was a deadbeat if she didn't pay. Although plaintiff's petition alleged she was abused, embarrassed and intimidated by the calls, she denied in deposition that she was embarrassed, and claimed she felt abused solely because she was unnecessarily roused from bed when sleeping. Plaintiff also testified to feeling intimidated by calls insisting she pay a bill she didn't feel she should. Although the petition alleged GFC's calls caused plaintiff to be less efficient at work, she testified no one at the post office told her she was less efficient, and she never lost a day of work because of the calls. While plaintiff claims to have noticed a reduction in her ability to perform work on the night following an afternoon telephone call from GFC, her work did not fall below minimum standards set for her at her place of work.

Even if we were to opine that telephone calls could constitute an actionable "intrusion" under plaintiff's theory, we believe that summary judgment was appropriate here. Comment d to § 650B of the Restatement (Second) of Torts contains the following pertinent observation:

d. There is ... no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which there is no liability for knocking at the plaintiff's door; or calling him on the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

While ordinarily a question for the jury, we cannot find the six to eight polite telephone calls made by GFC to plaintiff over a period of several months amount to the type of intrusion that could be found highly offensive to the ordinary person or to constitute "hounding." This is not a trespass action in which damages are presumed, and it is appropriate to hold the plaintiff to some claim of substantial damages. *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo. banc 1983), provides something of an analogy in the requirement that damages in a non-impact negligence case be "medically significant." The trial court did not err in entering summary judgment for defendant GFC on Count V of plaintiff's First Amended Petition, or Count VI, the corresponding claim for punitive damages.

Accordingly, the judgment of the trial court for summary judgment as to Counts V and VI for plaintiff's First Amended Petition and the order of dismissal as to Counts III and VI of her Third Amended Petition is affirmed. The judgment of the trial court dismissing Counts I, II, IV and V of her Third Amended Petition is reversed, and the cause remanded for proceedings consistent with this opinion.

HIGGINS, GUNN, BLACKMAR and DONNELLY, JJ., and MORGAN, Senior Judge, concur.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

BILLINGS, J., not sitting.

WELLIVER, Judge, concurring in part and dissenting in part.

I concur in the opinion of the Court except insofar as it holds plaintiff's third amended petition sufficient to state a cause of action for fraud. Had plaintiff paid for all four pieces of the bedroom set with the understanding that defendant Thal would deliver them forthwith, I could agree with the conclusion reached by the majority. A fair reading of plaintiff's petition reveals, however, that she bargained for something else. Plaintiff alleges she paid $369 and accepted defendant's tendered delivery of three pieces of the set. She further alleges that she "agreed to pay a balance of $142.99 ... following the delivery of the solid wood headboard." Withholding payment for the headboard clearly indicates that plaintiff placed no reliance on Thal's representations. At most, plaintiff has a cause of action for breach of the contract to deliver the headboard at some future time.