**UROLOGIC SURGEONS, INC., Appellant,**

v.

**Arnold BULLOCK, Respondent.**

**No. ED 82298.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 30, 2003.

Kenneth J. Mallin, Ameer Gado, Bryan Cave LLP, St. Louis, MO, for appellant.

Michael P. Smith, Moser and Marsalek, P.C., St. Louis, MO, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Urologic Surgeons, Inc. ("US") appeals the summary judgment entered by the Circuit Court of the County of St. Louis in favor of respondent, Dr. Arnold Bullock ("Bullock"). US brought suit against Bullock for promissory estoppel, breach of contract, fraudulent misrepresentation and negligent misrepresentation. We affirm.

US provides urological services to patients in the St. Louis metropolitan area. In December of 1999, there were three equal shareholders of US: Dr. Bela Denes ("Denes"), Dr. Perry Lovinggood ("Lovinggood") and Dr. Stephen Bigg ("Bigg"). At this time, Bullock was employed as an urologist at Washington University School of Medicine at Barnes Jewish Hospital ("Barnes"). On December 10, 1999, Denes called Bullock about an "opportunity" that had arisen. Bullock agreed to meet with Denes on December 14, 1999, and did in fact meet with Denes and Bigg that evening. At the meeting on December 14, Denes and Bigg told Bullock that U.S. had the opportunity to purchase the medical practice of another urologist, Dr. John Gregory ("Gregory"). Gregory's practice was at Forest Park Hospital ("Forest Park"). Denes and Bigg told Bullock that U.S. would purchase Gregory's practice if Bullock agreed to join US.

Bullock and U.S. previously discussed the possibility of Bullock joining U.S. in 1997, but those discussions ended without an agreement. One of the reasons the 1997 discussions ended without an agreement was because U.S. did not have an office sufficiently close to Bullock's patient base, near Barnes. US thought that Bullock would now be interested in joining U.S. because Gregory's practice was near Bullock's existing patient base at Barnes.

Following the meeting on December 14, 1999, Denes believed that Bullock had agreed to join U.S. immediately, and that Bullock would resign from Barnes in January of 2000. Denes also stated that at the meeting on December 14, Bullock and U.S. had agreed upon the following: Bullock's compensation, that Bullock would join U.S. as a shareholder, the terms of a non-competition agreement and Bullock's working conditions, including his primary office at Forest Park. There was, however, no written document memorializing the agreement.

The parties did agree that if Bullock joined US, his contract would be similar to those of the other doctors. The length of the contract would be for five years, with a two-year non-compete agreement. However, Denes, Lovinggood and Bigg did not have the same understandings as to when Bullock officially agreed to join US. They also had different understandings as to certain conditions of Bullock's employment, such as whether Bullock would join U.S. as a shareholder immediately or if he would be an employee for the first year and then become a shareholder.

Bullock stated his understanding was that he did not agree to join U.S. at the meeting on December 14, but rather merely expressed interest in further negotiations.

US then entered into a written contract on December 22, 1999 to purchase Gregory's practice for $100,000.

Bullock examined patients at Gregory's former practice at Forest Park on December 23, 1999, but he never received any compensation for this work. Prior to seeing the patients, Bullock filled out and signed an insurance application for cover-

age in order to see patients at facilities owned by US.

Bullock had lunch with Bonnie Diamond ("Diamond"), the office manager for U.S. on December 28, 1999. At this meeting, Bullock told Diamond "I am nervous, but I'm doing the right thing." Later that evening, Bullock had dinner with Denes, Lovinggood and Bigg. This was the first meeting Lovinggood had with Bullock.

In January of 2000, when Bullock was to resign from Barnes and join US, he failed to do so. US tried numerous times to contact Bullock, but they were unsuccessful in their attempts.

US then brought suit against Bullock, and he moved for summary judgment. In support of his motion for summary judgment, Bullock filed answers to interrogatories, the depositions of Denes, Lovinggood, Bigg, Diamond and Bullock, and the employment agreements between U.S. and Denes, Lovinggood and Bigg, including stock purchase agreements.

In opposition to Bullock's motion for summary judgment, U.S. filed the depositions of Denes, Lovinggood, Bigg, Diamond, Gregory and Vernon Gross,[1] the employment agreements between U.S. and Bigg and Lovinggood, answers to interrogatories, the contract to purchase Gregory's practice, the insurance application Bullock filled out to see patients at U.S. and several other documents.

The trial court granted Bullock's motion for summary judgment. US appeals.

The standard of review of a summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We "review the record in the light most favorable to the party against whom judgment

was entered[,]" and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* at 376. "The facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.*

■ A "defending party" may establish a right to summary judgment in any one of three ways: 1) by showing facts that negate any one of the plaintiff's elements facts, 2) by showing that the plaintiff has not, and will not, be able to produce sufficient evidence to show the existence of any one of the plaintiff's elements, or 3) by showing there is no genuine dispute as to the existence of each of the facts necessary to support a properly-pleaded affirmative defense. *Id.* at 381. "Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *ITT Commercial*, 854 S.W.2d at 381.

■ Once a defendant party establishes a right to judgment as a matter of law, the plaintiff's only recourse is to show that one or more of the material facts shown by the defending party to be above any genuine dispute is, in fact, genuinely disputed. *Id.* The plaintiff may show this by affidavit, depositions, answers to interrogatories, or admissions on file. *Id.*

■ In its first point on appeal, U.S. argues the trial court erred in granting Bullock's motion for summary judgment because Bullock fraudulently misrepresented his future intent to permanently join U.S. and to staff Gregory's former office.

■ The elements of a fraudulent misrepresentation are: 1) a false, material representation, 2) the speaker's knowledge

---

1. Vernon Gross was a patient of Gregory. Mr. Gross saw Bullock on December 23, 1999 at Forest Park, at which time Bullock informed Gross that he was taking over Gregory's practice.

of its falsity or his ignorance of the truth, 3) the speaker's intent that the hearer act upon the representation in a manner reasonably contemplated, 4) the hearer's ignorance of the falsity of the representation, 5) the hearer's reliance on its truth, 6) the hearer's right to rely thereon, and 7) the hearer's consequent and proximately caused injury. *Thoroughbred Ford, Inc. v. Ford Motor Co.*, 908 S.W.2d 719, 731 (Mo. App. E.D.1995). A party cannot recover for fraudulent misrepresentation if that party fails to establish any one of the required elements. *Id.*

At issue in this case is whether U.S. established the existence of a false, material representation by Bullock, that he knew was false or was ignorant of its truth when made, and whether U.S. had the right to, and did in fact rely on Bullock's representation.

 "It is well-settled that an unkept promise does not constitute actionable fraud unless it is accompanied by a present intent not to perform, in which case it constitutes a misrepresentation of a present state of mind—itself an existent fact." *Id.* 908 S.W.2d at 732. The fact that the party did not ultimately perform is not enough, without more, to show that the promisor did not intend to perform when the promise was made. *Id.* (*quoting Kiechle v. Drago*, 694 S.W.2d 292, 294 (Mo.App. W.D.1985).

US argues this case is similar to *Sofka v. Thal*, 662 S.W.2d 502 (Mo.banc 1983). In *Sofka*, plaintiff went to defendant's furniture store and told defendant that she wanted to purchase a bedroom set that consisted of a dresser, mirror, chest and a solid-wood headboard. *Id.* at 504. The furniture, except the headboard, was in defendant's store and available for delivery. *Id.* at 504–5. Defendant told plaintiff that the headboard was at his warehouse and that it would be delivered to

plaintiff with the rest of the furniture. *Id.* at 505. However, unknown to plaintiff, defendant either made the representation knowing it was false, or not knowing whether it was true or false, and intended to induce plaintiff into purchasing the furniture. *Id.* The furniture was delivered, but plaintiff received the wrong headboard. *Sofka*, 662 S.W.2d at 505. Defendant repeatedly told plaintiff that he had made a mistake, and assured plaintiff that the correct headboard would be delivered. *Id.* The correct headboard never was delivered, and plaintiff eventually brought suit, alleging fraud, among other claims. *Id.* at 505, 507.

Defendant argued that his statement that the solid-wood headboard would be delivered with the other furniture was not a representation of existing fact, but rather a promise to deliver the headboard, and therefore was not fraudulent. The trial court dismissed plaintiff's fraud claim. *Id.* at 504. The supreme court reversed, holding that plaintiff's allegations that defendant either knew his statement was false when made, or defendant did not know whether it was true or false supported an inference that defendant either had no intention of performing the promise to deliver the headboard when the promise was made, or defendant made the promise in reckless disregard as to whether he could perform. *Id.* at 507.

US points to three items of evidence to show that Bullock either had no intention of performing his promise to join US, or he that he made the promise in reckless disregard as to whether he would perform. First, U.S. relies on a statement Bullock made to Bonnie Diamond, the office manager for US, at a lunch meeting on December 28, 1999. At the lunch, Bullock told Diamond "I am nervous, but I'm doing the right thing." US argues this statement showed that Bullock was uncertain as to

whether he would follow through with his promise two weeks earlier to join US. Second, U.S. argues that Bullock demonstrated his uncertainty about joining U.S. by filling out the insurance application and seeing patients at Gregory's former office at Forest Park on December 23, 1999, yet later failing to join US. And third, U.S. argues that Bullock's repeated representations to Denes that he was going to resign from Barnes, but his ultimate failure to do so, further demonstrated that Bullock did not know whether he was ever going to join US.

In its petition, U.S. stated "[b]efore [US] purchased [Gregory's] Practices, Bullock purportedly changed his mind about the agreements he reached with [US]." The petition continues that "Bullock did not tell U.S. about his changed mind" and that by remaining silent he misrepresented his earlier agreement to join US. It further alleges that Bullock had a duty to inform U.S. "about his change of mind," and that U.S. would not have purchased Gregory's practice if it had known that Gregory "had had a change of mind and was unwilling to become a partner in [US]."

In its petition, U.S. simply claimed that Bullock had promised to join U.S. but later changed his mind. Looking at the evidence in the light most favorable to US, it is apparent that Bullock simply changed his mind about joining US. Bullock's change of mind about joining U.S. does not rise to the level of a false, material representation. Further, U.S. did not show that Bullock's promise to join U.S. was accompanied by a present intent not to perform his promise. The inability of U.S. to establish a false, material representation is fatal to recovery for fraudulent misrepresentation. Because U.S. failed to establish a false, material representation, we need not address whether U.S. relied on Bullock's representation. Point denied.

In its second point on appeal, U.S. argues the trial court erred in granting summary judgment because Bullock's agreement to join U.S. is enforceable notwithstanding the statute of frauds.

The Missouri statute of frauds provides that: "[n]o action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith...." Section 432.010 RSMo 2000.

■ First, U.S. argues the statute of frauds is not applicable because U.S. performed its side of the bargain.

■ The statute of frauds does not prevent recovery on an oral contract if one party has fully performed. *Serafin v. Med 90, Inc.*, 932 S.W.2d 422, 424 (Mo.App. E.D.1996).

US argues "the evidence overwhelmingly supports a finding that [US] fully performed its side of the oral agreement with [Bullock]" because U.S. purchased Gregory's practice for Bullock and because U.S. employed Bullock. US points to the following to show they employed Bullock: a) he saw patients at Gregory's old practice on December 23, 1999, b) he signed an insurance application the day before he saw the patients, c) U.S. printed business cards for Bullock, and d) U.S. placed Bullock's name on the door at Gregory's old practice at Forest Park.

However, we find that U.S. did not fully perform its side of the oral agreement with Bullock. While U.S. did purchase Gregory's practice, this does not constitute full performance. Bullock never received any compensation, he was not made a shareholder, he did not receive stock options, the agreement was never memorialized in

a written document, and the agreement was for a five-year contract that could not have been fully performed in less than five years.

US further argues that it at least partially performed its side of the oral agreement, and that partial performance is, at times, enough to take a case out of the statute of frauds. However, "[t]he doctrine of part performance, interposed to avoid the defense of the statute of frauds, is a creature of equity and has no application to an action at law for breach of contract." *Haugland v. Parsons,* 863 S.W.2d 609, 610 (Mo.App. E.D.1992), *quoting Whaling v. Little Piney Oil Co.,* 623 S.W.2d 589, 592 (Mo.App. S.D.1981), *citing Alonzo v. Laubert,* 418 S.W.2d 94, 97 (Mo. 1967). Therefore, partial performance cannot take this case out of the statute of frauds.

Second, U.S. argues the statute of frauds in not applicable because the oral agreement was capable of full performance within one year.

US relies on *Null v. K & P Precast, Inc.,* 882 S.W.2d 705, 707 (Mo.App. E.D. 1994). *Null* held that a contract that does not expressly run for longer than one year and is terminable at the will of the parties or on less than one year's notice, is not within the statute of frauds. *Id., quoting Koman v. Morrissey,* 517 S.W.2d 929, 935 (Mo.1974).

Both parties agreed that if Bullock had actually signed a written employment agreement with US, it would have been under the same terms as the other doctors. US argues the "key provision" in the agreement provided that the agreement would have been renewed on a yearly basis unless the `employee gives not less than ninety days written notice. US then argues that Bullock could have terminated his employment relationship at any time, and therefore does not fall within the statute of frauds.

However, the "key provision" of the agreement states the agreement "shall be for five (5) years...." Because the agreement expressly provides that employment shall run for longer than one year, the statute of frauds does apply in this case. Point denied.

In its third point on appeal, U.S. argues the trial court erred in granting summary judgment because promissory estoppel should prevent Bullock from denying he promised to permanently join US, and because U.S. detrimentally relied on Bullock's promise.

However, it is well-settled law that promissory estoppel does not remove an oral employment agreement from the statute of frauds. *Fields v. R.S.C.D.B., Inc.,* 865 S.W.2d 877, 878 (Mo.App. E.D. 1993), *Venable v. Hickerson, Phelps, Kirtley & Ass.,* 903 S.W.2d 659, 663 (Mo.App. W.D.1995), *Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co.,* 344 S.W.2d 639 (Mo.App. 1961). These cases have specifically refused to recognize estoppel in oral employment agreement situations. *Fields,* 865 S.W.2d at 878.

Likewise, we refuse to apply promissory estoppel in this case. Point denied.

Based on the foregoing, the judgment of the trial court is affirmed.

MARY R. RUSSELL, J. and PAUL J. SIMON, SR., J. concur.