Michael BESHORE and Donna
Beshore, Appellants,

v.

Donald GRETZINGER, Respondent.

No. WD 32775.

Missouri Court of Appeals,
Western District.

Oct. 26, 1982.

Larry E. Kinnamon, Jr., Kansas City, for appellants.

Charles E. Weedman, Jr. (argued), Crouch, Crouch, Spangler & Douglas, Harrisonville, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Judge.

Michael and Donna Beshore appeal from the order of the trial court sustaining the defendant's motion for a directed verdict at the close of plaintiffs' evidence in an action for damages for personal injury, loss of consortium and property damage. We reverse.

On the night of November 18, 1979, Mr. and Mrs. Beshore and Mrs. Beshore's children, riding in a 1965 Plymouth station wagon, collided with a black bald-face cow in the northbound lane on Route BB approximately two miles south of Ballard, Missouri, in Bates County. Mrs. Beshore suffered back and neck injuries, the car was damaged and the cow, thrown some twenty feet into the southbound lane of Route BB, was killed. The Beshores filed suit against Donald Gretzinger, the lessee of a pasture approximately four hundred fifty feet from the accident scene who raised black, bald-faced cattle. The petition alleged that the defendant owned the cow and that it was running at large in violation of the Missouri Stock Law, § 270.010,[1] which reads in pertinent part:

It shall be unlawful for the owner of any ... cattle ... in this state, to permit

---

1. All sectional references are to Revised Statutes of Missouri, 1978.

860

the same to run at large outside the enclosure of the owner of such stock, and if any of the species of domestic animals aforesaid be found running at large, outside the enclosure of the owner, it shall be lawful for any person ... to restrain the same forthwith, and thereupon the owner shall ... pay all persons damaged by reason of such animals running at large, the actual damages sustained by him or them; provided, that said owner shall not be responsible for any accident on a public road or highway if he establishes the fact that the said animal or animals were outside the enclosure through no fault or negligence of the owner....

At the trial Mr. Beshore testified that in obedience to a curve warning sign he had slowed to forty-five miles per hour when he saw the white face of the cow. He "slammed on his brakes" causing the occupants of the car to be thrown forward. Brittani, Mrs. Beshore's nine-year-old daughter, flew from the back of the station wagon onto Mrs. Beshore's head and neck. After the impact, Mr. Beshore turned the car around so that the headlights shone on the dead cow. As he did so, he noticed cattle with white faces in the nearby pasture.

On the morning after the accident he checked the Gretzinger fence and found "dips" in the ground leaving gaps between the ground and the fence. He offered into evidence photographs of the fence taken some seventeen months after the accident. These exhibits were denied because Mr. Beshore could not show that he knew the boundaries of Mr. Gretzinger's leasehold.

Mrs. Beshore confirmed the facts of the accident. However, she did not inspect the fence until shortly before trial. Mrs. Beshore, her doctor and physical therapist presented evidence of her injuries and medical expenses.

Melvin Wendleton, who lived south of the accident scene, observed the car at the accident scene and investigated. Fearing that it was his cow, he found a brand on it that, in the dark, appeared to be a "G" or a "C". Both Mr. Wendleton and his son, David, testified that they had never noticed any gaps or holes on Mr. Gretzinger's fences.

Called as an adverse witness for the Beshores, Mr. Gretzinger testified that he owned bald-face cattle with a "G" brand on the date of the accident. After the accident his employee, Ernest Koehn, assumed the dead animal belonged to his employer and placed it on Gretzinger's leased property where it remained. Since Mr. Gretzinger was out of the state at the time of the accident he did not inspect the scene until a few days later. At that time he saw no evidence that a cow had gone through the fencing. He had no personal knowledge as to whether any gates were left open that night. No such gate opened onto Route BB, however, and he had never known the gates inside the property to be left open. The fence along Route BB is 32-inch hog wire with three barbed wires on top attached to hedge posts and "maybe a steel post". The fencing around the property was routinely inspected. Photographs, showing the fencing to be in good repair, were admitted into evidence.

Section 270.010 was read to the jury, and the parties stipulated that the law was in effect in Bates County on the date of the accident.

The trial judge made the following statement when overruling the Beshores' motion for a new trial:

THE COURT: ...

I think, so there is no misunderstanding in the event you appeal the matter, *the Court did not find that you did not make a submissible case as to the ownership of the cow,* and I will say that on the record for you. What the Court found was that

at the close of all your evidence there was no submissible case as to the question of negligence and that you did call the defendant as an adverse witness and his testimony was uncontroverted about the condition of the fences, and again I want to mention to you that in your opening statement, when you were pointing out to the jury about what your evidence would show, you told them that the evidence would show that the cow came out through a barbed wire, one-strand barbed wire with a tire tied to it, and the evidence developed that that wasn't where the defendant's cattle were enclosed, so I think to a degree you are bound by your opening statement as to what you told them the evidence was going to be. As the evidence developed, it didn't develop that way at all, and *I very sincerely didn't feel you made a submissible case as to the question of negligence* and that the defendant, when he was called as an adverse witness, did meet whatever burden he had to disprove any negligence *that was uncontroverted by any other witness you had,* including the Wendletons who you called (emphasis added).

On appeal the Beshores contend that the trial court committed prejudicial error by: (1) excluding their photographs of the fencing around the Gretzinger leasehold; and (2) sustaining Mr. Gretzinger's motion for directed verdict at the close of plaintiffs' evidence.

■ On the first point, we consider only whether the evidence showed that the photos were a "true and faithful representation of the subject, place or condition" they purport to represent, at the time of the accident. The question is one that rests in the sound discretion of the trial judge. We cannot disturb his ruling unless it is shown to be an abuse of that discretion. *Fox v. City of Kansas City,* 343 S.W.2d 200, 201 (Mo.App.1960).

The record shows that Mr. Beshore, the photographer, identified the photographs taken some seventeen months after the accident as fairly and accurately representing the condition of fencing he observed which enclosed a herd of black bald-faced cattle similar to the animal involved in the accident, as it appeared on the day after the wreck. The defendant objected to their admission on the basis that Mr. Beshore could not state that he knew the boundaries of the land belonging to Grant Cook, the lessor of the property leased by defendant. He had determined that the fence he was photographing was on Mr. Cook's land by asking neighbors where the Cook property was. The trial court excluded the photographs.

If this testimony by Mr. Beshore were all we had before us relevant to the admissibility of these photographs, we would have to agree that the proper foundation was lacking. Here, however, we also have a diagram admitted as Defendant's Exhibit 2, in which the defendant drew a map of his leased land, including the area referred to as the east pasture. Mr. Beshore, referring directly to the defendant's diagram, testified that in order to take the photograph labeled Plaintiff's Exhibit 14, he had walked into the east pasture. He further testified that Plaintiff's Exhibit 10 was taken at the southwest corner of that pasture, and that Plaintiff's Exhibits 11, 12 and 13 depicted "part of the east pasture."

■ Where we not only have testimony by defendant that he leased the east pasture, but a diagram of its perimeters as well, and testimony by plaintiff that he entered that same pasture to take photographs which "faithfully and accurately" represent the fencing as he observed on the day after the accident, we do not agree that failure of the plaintiffs to check the public records as to defendant's leasehold is fatal to the admissibility of the photographs. Defendant has admitted that the pasture

was part of his leasehold and plaintiff has carried the remainder of the burden required by *Fox*. We hold, therefore, that the trial judge abused his discretion in excluding the photographs.

On the second point, plaintiffs argue that the trial court erred in granting defendant's motion for directed verdict at the close of plaintiffs' evidence because they presented sufficient evidence to establish a prima facie case under § 270.010. We agree.

■ A directed verdict is a drastic measure, and on review we must consider all of the evidence in the light most favorable to the plaintiff, accept as true that which is not entirely unreasonable or opposed to physical laws, accord to plaintiff the benefit of all favorable inferences deducible from the evidence, reject all unfavorable inferences, and disregard defendant's evidence except insofar as it aids plaintiff's case. "When challenged on appeal, a verdict directed against plaintiff will fall 'unless the facts in evidence and the legitimate inferences to be drawn from such facts, are so strongly against the plaintiff as to leave no room for reasonable minds to differ.'" *Barnett v. M & G Gas Co.*, 611 S.W.2d 370, 371 (Mo.App.1981), quoting from *Abel v. Campbell 66 Express, Inc.*, 378 S.W.2d 269, 271 (Mo.App.1964).

■ Nevertheless, the duty is on plaintiffs to remove their case "from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence." *Zeigenbein v. Thornsberry*, 401 S.W.2d 389, 393 (Mo.1966), quoting from *Vietmeier v. Voss*, 246 S.W.2d 785, 787 (Mo. 1952).

Review of the motion for directed verdict raises the issue of what constitutes a prima facie case under § 270.010, and where the burden of proof on the issue of defendant's negligence lies.

The first interpretation of the statute as amended in 1939 appears in *Anderson v. Glascock*, 271 S.W.2d 243 (Mo.App.1954), in which the court held that the Stock Law does not impose strict liability on owners of stock, but holds liable only those owners who *permit* an animal to be on the highway. While recognizing that liability cannot be imposed absent fault or negligence, the court ruled at 247 that "the statute now places the burden of proof on the issue [of negligence] upon the owner of the stock."

On consideration of the decision in *Anderson*, this court held in *Keefer v. Hartzler*, 351 S.W.2d 479, 480–81 (Mo.App.1961), that four elements are required for a prima facie case: (1) proof as to the time and place of the accident; (2) proof of ownership or possession of the animal by defendant; (3) proof that the Stock Law was in effect; and (4) proof of damages. Further, the court held:

> Such proof ... entitles plaintiff to the verdict unless there is a further finding that the animal was outside the enclosure through no fault or negligence of the owner.... [T]he burden of proof ... is upon defendant to prove that said animal was on the highway without any fault or negligence upon the part of the defendant or his agent.

Defendant does not dispute that evidence sufficient for submission to the jury on the four elements required in *Keefer* has been produced. Defendant contends, however, that plaintiff is also required to show that the defendant negligently permitted the animal to run at large. This contention is based primarily on *Scherffius v. Orr*, 442 S.W.2d 120 (Mo.App.1969), in which the court held at 123 that plaintiff must show, in addition to the other elements, that "defendant had permitted it [the animal] to run at large" and that on so doing, plaintiff is entitled to a verdict in his favor "*unless* there was a proper showing the calf was outside the enclosure through no fault or

negligence of the defendant" (court's emphasis).

■ We agree with the court in *Scherffius* that this element is required. *Keefer* seems to take for granted the necessary element of proof by plaintiff of the presence of the cow running at large on the public road or highway. With proof of that element and the four elements mentioned in *Keefer,* the plaintiff may rest his case.

■ We do not agree with defendant, however, that this element requires proof by plaintiff of negligence or fault on defendant's part. The statute raises an inference from the fact of the cow's being upon the highway that the owner "permitted" the animal to "run at large outside the enclosure." As a practical matter, defendant's interpretation of *Scherffius* would require both parties to prove the element of negligence.

We reject this interpretation and find instead that the clear language of § 270.-010, stating that the owner "shall not be responsible for any accident on a public road or highway *if he establishes* the fact that said animal or animals were outside the enclosure through no fault or negligence of the owner" (emphasis added), places the burden of proof solely on defendant to prove that he was not negligent in allowing the animal to run loose.[2]

■ Examining the record, we do not find that defendant has met his burden.

Defendant was called by plaintiff to testify on the issue of the condition of the fences. He testified that he examined the fence one week after the accident and could not find where the cow got out. He also testified that part of the west pasture was enclosed only by a single-strand barbed wire and that this pasture could have been accessible to his cows if a gate had been left open. He did not know if the gate was left open on the date of the accident.

Whether the defendant carried his burden to prove that he was not at fault in maintaining the pasture's gates and fences is now moot because of our ruling upon the admissibility of plaintiffs' photographs. At a new trial, defendant will have new evidence to rebut.

■ We therefore hold that plaintiffs met their burden on the five essential elements and having done so, were entitled to have defendant's motion for directed verdict at the close of plaintiffs' evidence denied. Defendant must now produce what evidence he can to show he and his agents were not negligent in enclosing the animal.

Accordingly, we reverse the judgment of the trial court and remand the case for new trial.

All concur.

---

2.   *See also Cox v. Moore,* 394 S.W.2d 65 (Mo. App.1965) (holding that the burden of proving lack of negligence is on the owner) and *King v. Furry,* 317 S.W.2d 690 (Mo.App.1958) (approving instruction placing burden on defendant to prove cattle were on the highway without his fault or negligence).