CARLUND CORPORATION, Appellant,

v.

CROWN CENTER REDEVELOPMENT
CORP., et al., Defendant,

Elgard Corporation, Appellant–
Respondent,

J.H. Mackay Electric, et al.,
Respondent–Appellant.

Nos. WD 49430, WD 49476.

Missouri Court of Appeals,
Western District.

Sept. 5, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 31, 1995.

Application to Transfer Denied
Dec. 19, 1995.

Peter E. Strand, Kelly W. Schemenauer, M. Kevin Underhill, Shook, Hardy & Bacon,

P.C., Kansas City, for Elgard, appellant-respondent.

Greg T. Spies, Leonard L. Wagner, Watson & Marshall, L.C., Kansas City, for J.H. Mackay Elec., et al., respondent-appellant.

Before ULRICH, P.J., and SMART and ELLIS, JJ.

ULRICH, Presiding Judge.

Elgard Corporation (Elgard) appeals from the judgment entered following jury trial in favor of J.H. Mackay Electric Company, Inc. (Mackay) for breach of a construction contract under which Elgard was the general contractor and Mackay was an electrical subcontractor. Damages of $193,120 were awarded to Mackay consisting of $7,620 for electrical work performed by Mackay and $185,500 for attorney fees incurred by Mackay. Elgard claims the trial court erred in (1) awarding attorney fees to Mackay under the collateral litigation doctrine; (2) submitting four claimed erroneous instructions; (3) denying its motion for judgment n.o.v., asserting that damages arising from events occurring before October 11, 1989, could not have been the result of any alleged breach of contract by Elgard; and (4) allowing submission of "irrelevant and prejudicial evidence" submitted by Carlund. Mackay appeals from the trial court's order directing verdict in favor of Elgard on Mackay's claim of fraudulent misrepresentation, claiming sufficient evidence supported its claim.

The original plaintiff, Carlund Corporation (Carlund), sued Mackay, Crown Center Redevelopment Corporation (Crown Center), and Elgard. Elgard and Mackay asserted counter and cross-claims. Additionally, Elgard sued Federal Insurance Company (Federal), Mackay's surety. Carlund's claims were stayed, and the case proceeded on the cross-claims between Mackay and Elgard, Elgard's claim against Federal, and Mackay's counterclaim against Carlund.

The judgment in favor of Mackay is affirmed in part, reversed in part and is remanded to the trial court. The order directing verdict in favor of Elgard for fraudulent misrepresentation is affirmed.

*Facts*

Dispute arose from a construction project at a parking garage owned by Crown Center. The project involved installation of a "cathodic protection system", an electrical system which retards deterioration of reinforced concrete structures. Various contractors were hired to work on the project.

On June 9, 1989, Crown Center signed a written contract naming Elgard the general contractor for the Crown Center project. By letter, on June 13, 1989, Elgard engaged Mackay as prime subcontractor for the project and requested Mackay to begin work on the project in accordance with its bid. The letter stated that a written subcontract would follow. On the same day, Mackay sent a similar letter to Carlund as Mackay's subcontractor requesting it to begin work in accordance with its bid.

On July 31, 1989, Elgard sent Mackay a formal subcontract which Mackay signed on August 31, 1989. Likewise, Mackay offered Carlund a formal contract. Carlund found the contract unacceptable and refused to sign it. Mackay never secured a signed contract, a performance bond, or a certificate of insurance from Carlund.

Disputes arose between Mackay and Carlund. Carlund demanded further payments to continue working, and Mackay found Carlund's work inadequate. On October 6, 1989, Carlund ceased working and left the project.

On October 10, 1989, representatives of Elgard and Carlund met in an effort to resolve the disputes and complete the project timely. The next day, October 11, 1989, Clem Firlotte and Michael Mazzuca of Elgard met with Mackay's representatives, Jack Feeney and John Mackay. Mackay expressed its wish to engage a different subcontractor to replace Carlund. Elgard, however, agreed to relieve Mackay of the portion of its bond pertaining to Carlund, to obtain and provide written confirmation that Carlund would not sue Mackay for work performed on the project, to hold Mackay harmless for work performed by Carlund for the entire project, and to issue an amended contract to Mackay reflecting these changes. Based on these statements, Mackay permit-

ted Carlund to return to the job site to work under Elgard. Carlund, however, did not provide written confirmation that it would not initiate litigation.

On October 13, 1989, Mr. Mazzuca sent a letter of intent by facsimile to Mackay outlining the terms of the agreement discussed on October 11. The letter was unsigned, and Elgard contended that it was only a summary of negotiating points which had been raised in the October 10 and 11 meetings. Elgard never issued a formal amendment to Mackay's contract, released Mackay's bond, or obtained a release of Mackay from Carlund. Ultimately, Elgard terminated Carlund on October 31, 1989, for unsatisfactory performance.

Carlund sued Crown Center, Elgard, and Mackay to enforce a mechanic's lien, for breach of contract, and in quantum meruit. Elgard and Mackay filed cross-claims against each other asking for attorney's fees. Elgard sought to recover fees under a contractual provision. Mackay claimed recovery of fees was justified by the collateral litigation doctrine. At trial, evidence of Elgard and Mackay's attorney fees was introduced pursuant to the parties' stipulation.

On the eve of trial, the trial court stayed Carlund's claims because the company was not registered to do business in Missouri. Thus, the trial was bifurcated, and only the cross-claims between Elgard and Mackay, Mackay's counter-claims against Carlund, and Elgard's claims against Federal were tried.

The trial court directed a verdict in favor of Elgard on Mackay's cross-claim for fraudulent misrepresentation. The jury returned its verdict against Elgard in favor of Mackay and awarded Mackay damages of $193,120, and judgment was entered accordingly. The award consisted of $7,620 for electrical work performed by Mackay on the project after October 11, 1989, and $185,500 for attorney fees. The award for attorney fees was in the aggregate and did not distinguish between fees incurred pursuing different claims. The judgment also included an obligation to indemnify Mackay for any damages Mackay paid to Carlund. Elgard's and Mackay's appeals followed.

## *Elgard's Appeal*

### I.

As its first point on appeal, Elgard claims the trial court erred in awarding attorney fees to Mackay under the collateral litigation doctrine. It argues that the trial court improperly denied its motion for summary judgment, motion in limine, motion for directed verdict, and motion for judgment notwithstanding the verdict regarding the issue.

First, Mackay asserts the issue of attorney fees was not preserved for review on appeal because evidence of Mackay's attorney fees was admitted at trial without objection and by stipulation. Elgard, however, argues that the issue was raised and preserved in its motion for summary judgment, motion in limine, motion for directed verdict, and motion for judgment notwithstanding the verdict. Mackay argues that denial of the motion for summary judgment and motion in limine are not reviewable on appeal and that Elgard did not raise the collateral litigation doctrine issue in its motion for directed verdict. Additionally, it claims that since the doctrine was not raised in the directed verdict motion, it cannot be raised in a motion for judgment notwithstanding the verdict.

An appellate court may not address an issue that was not put before the trial court. *Stone v. City of Columbia*, 885 S.W.2d 744, 747 (Mo.App.1994). The denial of a motion for summary judgment is not subject to appellate review, even when the appeal is taken from a final judgment. *State ex rel. Missouri Div. of Transp. v. Sure–Way Transp., Inc.*, 884 S.W.2d 349, 351 (Mo.App. 1994). Likewise, a motion in limine preserves nothing for appeal absent an objection to the evidence when it is presented at trial. *Williams v. Enochs*, 742 S.W.2d 165, 168 (Mo. banc 1987). Thus, Elgard's motion for summary judgment and motion in limine regarding the collateral litigation issue are not appealable and did not preserve the issue for review on appeal.

Additionally, Elgard did not raise the issue in its written motion for directed verdict. It, however, made an oral motion for directed verdict in which it objected to an

award of attorney fees to Mackay. It stated, "Also, a formal objection renewed to submission of collateral litigation requirements for attorneys fees as pled in our motions in limine and renewed at the close of the evidence. I don't believe they are entitled as a matter of law to attorneys fees." Likewise, Elgard raised the objection in its motion for judgment notwithstanding the verdict, or in the alternative, for a new trial and suggestions in support of the motion. Elgard, therefore, preserved the issue for review on appeal.

Elgard does not argue that the attorney fees were not incurred in good faith or that the fees were unreasonable. Additionally, it does not contend as a point on appeal that it did not have an agreement with Mackay or that it did not breach that agreement. Instead, Elgard's argument centers on whether the litigation was collateral, the proximate result of the breach by Elgard, and what amount of attorney fees is recoverable. Specifically, Elgard asserts that the award of attorney fees to Mackay was not authorized by the collateral litigation doctrine as a matter of law because (1) the third-party lawsuit between Mackay and Carlund was not a separate, distinct, collateral proceeding; (2) Mackay was awarded attorney fees that were not incurred in third-party litigation; (3) the third-party lawsuit between Mackay and Carlund was not the natural and proximate result of the alleged breach by Elgard; and (4) the submission of attorney fees evidence was not properly segregated.

■ In Missouri, attorney fees are generally recoverable when authorized by statute or contract, when needed to balance benefits in a court of equity, or when incurred because of involvement in collateral litigation. *Forsythe v. Starnes*, 554 S.W.2d 100, 111 (Mo.App.1977).

■ Collateral litigation arises when a breach of contract by one party causes another contracting party to sue or be sued by an outside third party. *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 557 (Mo.App.1985). An action need not be separate and distinct from an action between the contracting parties to be collateral litigation. *See O'Neil Lumber Co. v. Allied Builders Corp.*, 663 S.W.2d 326 (Mo.App.1983) (suit by subcontractor against general contractor was collateral to general contractor's action against escrowee although both claims were asserted procedurally in the same case).[1]

> To be awarded attorney's fees incurred as a result of collateral litigation, the wronged party must show that the litigation was the natural and proximate result of the wrong or breach of duty by the other party, that the fees were necessarily and in good faith incurred to protect the wronged party from injury and that the amount of the fees is reasonable.

*Forsythe*, 554 S.W.2d at 111 (citing *Johnson v. Mercantile Trust Company National Association*, 510 S.W.2d 33, 40 (Mo.1974)).

■ In this case, Carlund sued Mackay, among others, for breach of contract and in quantum meruit regarding the Crown Center project. Mackay filed a counter-claim against Carlund and a cross-claim against Elgard. Mackay incurred fees in defending Carlund's claim. It also incurred fees in asserting counter-claims against Carlund. These fees were incurred because Elgard failed to obtain a release from Carlund that Carlund would not sue Mackay for work performed on the project as Elgard had promised in the October 11, 1989, agreement between Elgard and Mackay. Elgard's failure to obtain the release as promised permitted Carlund to sue Mackay. Had Elgard obtained the release from Carlund, Carlund would have been precluded from successfully

1. Elgard relies on *Ohlendorf v. Feinstein*, 697 S.W.2d 553 (Mo.App.1985), for its contention that an action must be separate and distinct to be collateral litigation. In *Ohlendorf*, a partner in a partnership was found not to be involved in collateral litigation due to another partner's breach of the partnership agreement where a third party with a claim against the partnership was impleaded in an equity suit to wind up partnership business. *Id.* at 557. The Eastern District reasoned that all the parties' interests were settled in one proceeding. *Id.*

The present case, however, is distinguishable from *Ohlendorf*. *Ohlendorf* involved one equity action to determine the parties' interests in winding up and distributing the assets of a partnership. This case involved sundry claims regarding various contracts between the parties.

suing Mackay. Thus, attorney fees incurred by Mackay in litigation against Carlund for claims relating to the Crown Center project are recoverable under the collateral litigation doctrine. However, any fees incurred for litigation that were not the proximate result of Elgard's breach of the October 11, 1989, agreement, including fees incurred from litigation between Elgard, Mackay, and Federal, Mackay's surety, are not recoverable under the doctrine. Thus, the trial court erred in awarding attorney fees in the aggregate. That portion of the judgment relating to attorney fees, therefore, is reversed and that portion of the case is remanded to the trial court for determination of what fees were expended as a result of the Carlund/Mackay litigation.

## II.

As its next point, Elgard claims the trial court erred in denying its motion for judgment notwithstanding the verdict. It argues that damages arising from events prior to October 11, 1989, could not have been the result of the breach by Elgard. It suggests that Mackay's damages, including attorney fees, should have been apportioned based on the percentage of completion of the Crown Center project on October 11, 1989.

Elgard, however, fails to cite authority to support this suggestion. Under Rule 84.04(d), an appellant's obligation includes citing appropriate and available precedent to support its contention. *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978); *Shiyr v. Pinckney,* 896 S.W.2d 69 (Mo.App. S.D.1995). If no authority exists, an explanation is required for the absence of citations. *Id.* The absence of authority or explanation as to why authority is not available justifies the reviewing court considering the point abandoned. *Ray v. Upjohn Co.,* 851 S.W.2d 646, 656 (Mo.App.1993).

As discussed in point one, any attorney fees incurred in litigation filed against Mackay by a third party that were the natural and proximate result of Elgard's breach of the October 11, 1989, agreement are recoverable under the collateral litigation doctrine. Furthermore, evidence at trial showed that each party would be responsible for its own

attorney fees prior to October 11, and Mackay did not seek recovery for attorney fees it incurred prior to October 11, 1989.

This point is denied.

## III.

In its next two points, Elgard claims the trial court erred (1) in submitting identified instructions to the jury because the instructions unduly emphasized certain facts, misstated facts, and confused the jury; and (2) in admitting evidence by Carlund that was irrelevant and prejudicial. Rule 84.04(d) states that "points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." Rule 84.04(d). If a point relied on fails to comply with this rule, nothing is preserved for appellate review. *Page v. Associated Couriers, Inc.,* 868 S.W.2d 138, 140 (Mo.App.1993).

Elgard claims instruction No. 5 was erroneous and prejudicial for two reasons. Elgard asserts Instruction No. 5 "gave the appearance" that the trial court assumed an October 11 oral agreement between Mackay and Elgard. Elgard also asserts that Instruction No. 5 emphasized the purported oral agreement between Elgard and Mackay and deemphasized the written agreement of July 31. Instruction No. 5 stated in its entirety, "Parties may contract without a writing."

Elgard claims submission of Instruction No. 10 was an abuse of discretion because the instruction misstated facts and confused the jury. Elgard claims the date of August 31, 1989, appearing in Instruction No. 10 did not correspond to the July 31, 1989, contract of the parties, acknowledging that this date did represent the date the July 31 contract was signed by Mackay. Additionally, Elgard claims the instruction confused the jury regarding "the various contracts at issue." Instruction No. 10 stated:

Your verdict must be for J.H. Mackay Electric Company, Inc. if you find that there was no consideration for the agreement on August 31, 1989. 'Consideration' as used in these instructions means the

agreement resulted in a detriment to Elgard Corporation or a benefit to J.H. Mackay Electric Company, Inc. An agreement to do what one is already legally bound to do is not sufficient consideration.

Elgard claims the trial court erred in allowing Carlund to introduce irrelevant evidence that prejudiced Elgard. Elgard fails to assert in its stated point or even in the argument portion of its brief specifically what evidence it contends was erroneously admitted. Thus, Elgard does not state in its point relied on "wherein and why" the introduction of evidence was erroneous.

Elgard's contentions are general assertions devoid of support, and they are meritless. Elgard's Points Relied On are deficient under Rule 84.04(d) and, therefore, are not preserved for appellate review.

### Mackay's Appeal

As its sole point on appeal, Mackay claims the trial court erred in directing the verdict in favor of Elgard on Mackay's claim of fraudulent misrepresentation, asserting that the evidence made a submissible case of fraud. Mackay professes two separate grounds existed supporting its claim of fraud. First, it claims Elgard affirmatively misrepresented its intent to perform the October 11, 1989, contract when it entered into the agreement. Next, Mackay claims Elgard omitted disclosing, or concealed, a condition to its performance of the October 11, 1989, agreement that Carlund would have to perform its agreement before Elgard performed its duties to Mackay as provided by the agreement.

Elgard argues that Mackay did not raise the fraud by concealment ground at trial and, therefore, did not preserve it for appellate review. "An erroneously directed verdict is an error which must be raised in a motion for new trial to be preserved for appellate review." *Brouk v. Brueggeate,* 849 S.W.2d 699, 702 (Mo.App.1993) (citing *Baxter v. Acme Sheet Metal Works, Inc.* 763 S.W.2d 733, 735 (Mo.App.1989)). Mackay filed a motion for new trial claiming the trial court erred in directing a verdict in favor of Elgard in light of evidence of Elgard's affirmative

misrepresentation. It did not, however, argue fraud by concealment. Mackay, therefore, has failed to preserve the issue of fraud by concealment for appellate review.

The granting of a directed verdict is a drastic measure. *Vandever v. Junior College Dist. of Metro. Kansas City,* 708 S.W.2d 711, 716 (Mo.App.1986). Review of a directed verdict in behalf of a defendant requires that all evidence must be considered in the light most favorable to the plaintiff, according to the plaintiff the benefit of all favorable inferences deducible from it. *Id.* (quoting *Beshore v. Gretzinger,* 641 S.W.2d 858, 862 (Mo.App.1982)). Likewise, all unfavorable inferences are rejected, and defendant's evidence is disregarded except insofar as it aids plaintiff's case. *Id.* "The defendant is only entitled to a directed verdict if reasonable minds, viewing the evidence in a light most favorable to plaintiff, could only have found in defendant's favor." *Id.* (citing *Jarrell v. Fort Worth Steel & Manufacturing Co.,* 666 S.W.2d 828, 833 (Mo.App.1984)).

The elements of fraud are: 1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity or his ignorance of its truth, 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequent and proximately caused injury. *Sofka v. Thal,* 662 S.W.2d 502, 506 (Mo. banc 1983) (citing *Ackmann v. Keeney–Toelle Real Estate Co.,* 401 S.W.2d 483, 488 (Mo. banc 1966)).

Elgard asserts that Mackay failed to prove a misrepresentation and, therefore, did not make a submissible case for fraud. A promise accompanied by a present intent not to perform is a misrepresentation sufficient to constitute fraud. *Breier v. Koncen Meat Co.,* 762 S.W.2d 499, 500 (Mo.App.1988) (quoting *Hohenstreet v. Sterling Nat. Land Co.,* 706 S.W.2d 80, 84 (Mo. App.1986)). A failure to perform alone, however, is not sufficient to establish the intent of the promisor at the time the agreement

was made. *Id.* The mere giving of a promise, though breached the next day, does not give rise to an action for tortious fraud. *Sofka,* 662 S.W.2d at 507.

█ Mackay claims that Elgard made the October 11, 1989, agreement with an intent not to perform. Elgard's representatives testified at trial that they did not intend to enter into an agreement with Mackay on October 11, but were merely negotiating an agreement. Furthermore, they testified that the October 13, 1989, letter merely set out the negotiating points. Evidence of a dispute as to whether an agreement was made between Elgard and Mackay was not sufficient to show a present intent of Elgard not to perform the claimed agreement. To hold otherwise would permit a claim of fraudulent misrepresentation in every case where there is a dispute regarding whether an agreement was made. Mackay, therefore, failed to establish an essential element of fraud, misrepresentation. The trial court did not err in directing a verdict in favor of Elgard on Mackay's claim of fraudulent misrepresentation.

Mackay's point is denied.

The portion of the judgment in favor of Mackay for $7,620 for electrical work performed is affirmed. That portion of the judgment relating to attorney fees is reversed and is remanded to the trial court for determination of what attorney fees were expended in the Carlund/Mackay litigation and for entry of judgment in the sum determined by the trial court consistent with this opinion. The order directing the verdict in favor of Elgard on Mackay's claim of fraudulent misrepresentation is affirmed.

All concur.