# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3560

_____

Family Snacks of North     *
Carolina, Inc.,     *
    *
      Appellee,     *
    *   Appeal from the United States
      v.     *   District Court for the Western
    *   District of Missouri.
Prepared Products Company,     *
Inc., Thomas W. Lehmer,     *
    *
      Appellants.     *

_____

Submitted: April 19, 2002

Filed:   July 11, 2002

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Prepared Products Company, Inc. ("Prepco") appeals the decision of the district court[1] granting summary judgment in favor of Family Snacks of North Carolina, Inc. ("Family Snacks"). We affirm the district court.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

## I.  BACKGROUND

This action arises out of a supply agreement entered into by Family Snacks and Prepco on February 17, 1998.  Pursuant to the agreement, Prepco agreed to buy $10 million worth of private label canister nut products and kettle chip products from Family Snacks during the first year of the contract, beginning on July 1, 1998.  These products were to be produced at a snack processing facility in North Carolina previously owned by Prepco and sold to Family Snacks in February 1998.  In fact, the purchase price of the North Carolina facility was based upon an agreement between Family Snacks and Prepco that Prepco would reduce the purchase price of the facility and would recoup the difference through the implementation of a low-cost manufacturing arrangement with Family Snacks.  This compact is outlined in the supply agreement, facilitating Prepco's plan to market to mass merchandisers under their private labels.

Under the supply agreement, Family Snacks would sell the products to Prepco on a "cost plus" basis, designed to yield a purchase price lower than the market price for wholesale snack foods.  Thomas Lehmer, Prepco's CEO, personally guaranteed the full and timely payment and performance of all of Prepco's obligations under the contract.  Further, the agreement contained a formula for calculating the price of the products.  The charges were to be calculated through a formula based upon the manufacturing costs of the particular product, plus a fifteen percent profit margin.  The manufacturing costs were to be determined using factors outlined in the formula, which was attached as Exhibit A.  In addition, the manufacturing costs included a fixed overhead expense of twenty-nine cents per pound of product.

It is undisputed that during the first year of the supply agreement, Prepco bought nothing from Family Snacks.  As a result, Family Snacks filed this suit for breach of contract seeking to collect $1.5 million in liquidated damages.  In response to the lawsuit, Prepco claims that the supply agreement is not an enforceable contract

because it is illusory. Prepco further argues that Family Snacks hindered Prepco's performance under the contract by failing to provide necessary pricing information, thereby limiting Prepco's ability to solicit orders, and by refusing to acknowledge that Prepco's purchase of any product other than kettle chips and canister nuts would reduce its minimum purchase obligations under the agreement.

The district court entered judgment in favor of Family Snacks on its motion for summary judgment, concluding that under the Uniform Commercial Code and general principles of usage of trade, it was reasonable to require Prepco to first identify the products it wished to buy. The court held that Prepco breached its duty in this regard. As a result, the district court concluded that Family Snacks established its claim for breach of contract as a matter of law. As to Prepco's affirmative defense of hindrance, the district court held that because Prepco was required to act first, and failed to do so, the record did not support a finding that Family Snacks interfered with Prepco's obligation to purchase products. Finally, the court denied the admission of two of Prepco's proffered affidavits, finding them unreliable and a sham.

## II.    DISCUSSION

### A.    Standard of Review

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted). Under

Missouri law,[2] "summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that 'the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document.'" Missouri Consol. Health Care Plan v. BlueCross BlueShield of Mo., 985 S.W.2d 903, 908 (Mo. Ct. App. 1999) (citation omitted) (quoting MECO Sys., Inc. v. Dancing Bear Entertainment, Inc., 948 S.W.2d 185, 191 (Mo. Ct. App. 1997)).

### B.    Analysis

#### 1.    Contract Enforceability

To prevail in its claim against Prepco, Family Snacks must establish (1) the making and existence of a valid and enforceable contract between the parties; (2) Family Snacks' rights and Prepco's obligations under the contract; (3) a breach; and (4) resulting damages. McGraw v. Andes, 978 S.W.2d 794, 802 (Mo. Ct. App. 1998). Prepco argues that Family Snacks failed to establish that the supply agreement is an enforceable contract, the first element of the breach of contract claim. Prepco bases this argument on the allegation that the supply agreement is illusory because Family Snacks is not obligated to perform for any particular period of time resulting in a lack of mutuality of contract, and because no price term is specified, rendering the contract fatally uncertain.

Prepco argues that the lack of mutuality at the inception of the supply agreement renders it unenforceable for lack of consideration. As stated by the Missouri Supreme Court, "'[m]utuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound.'" Aden v. Dalton,

---

[2]As set forth in the supply agreement, the law of Missouri governs this dispute.

107 S.W.2d 1070, 1073 (Mo. 1937) (quoting <u>Gillen v. Bayfield</u>, 46 S.W.2d 571, 575 (Mo. 1931)). The question of whether mutuality exists, then, is a question of whether the contract fails for lack of mutual consideration. Prepco argues that under the supply agreement, Family Snacks' obligations are qualified to the point of rendering them illusory. We disagree.

Under the supply agreement, Family Snacks reserved the right to change the private label products manufactured by Family Snacks and sold to Prepco. Further, Family Snacks made no representations or warranties to Prepco regarding the exact date of operations of the manufacturing facility or whether operations would continue for a definite time. Prepco claims this language overly qualifies Family Snacks' obligation under the contract. However, Family Snacks' contract qualifications were not unrestricted, and do not render its other promises illusory. There is no requirement that each stipulation or term in a contract concerning Family Snacks must correspond with a stipulation or term binding upon Prepco. <u>Laclede Gas Co. v. Amoco Oil Co.</u>, 522 F.2d 33, 36 (8th Cir. 1975).

In <u>Laclede Gas</u>, we considered the effect of a cancellation clause that allowed one party to terminate the agreement on thirty days notice, with or without cause, and contained no reciprocal right for the other party. <u>Id.</u> at 37. Even though the agreement was virtually terminable at will by Laclede, the court found that, under Missouri law, the contract was not illusory.

> "Since the courts . . . do not favor arbitrary cancellation clauses, the tendency is to interpret even a slight restriction on the exercise of the right of cancellation as constituting such legal detriment as will satisfy the requirement of sufficient consideration; for example, where the reservation of right to cancel is for cause, or by written notice, or after a definite period of notice, or upon the occurrence of some

extrinsic event, or is based on some other objective standard."

Id. (quoting 1 S. Williston, Law of Contracts § 105, at 418-19 (3d ed. 1957) (footnotes omitted)). Here, as in Laclede Gas, Family Snacks' right was restricted in that it was only excused from its performance obligations where it ceased operations at the manufacturing facility, or where it altered the production of private label canister nut products and kettle chip products. These restrictions clearly bring this case within the rule, embedded in traditional contract law, and applied in Laclede Gas.

Prepco next argues that the supply agreement is unenforceable because there is no price term specified. Section 3 of the supply agreement, which provides for the price of the product, states in part that "[t]he prices for the Products sold to [Prepco] pursuant to this Agreement shall be as is set forth in Exhibit A attached hereto (the 'Manufacturing Costs') plus an amount equal to the 'Profit Margin.'" The supply agreement then defines "profit margin" in greater detail. Prepco argues that no prices are set forth in Exhibit A and that Family Snacks attempted to reserve for itself the unilateral ability to set whatever price it wished. We disagree.

The supply agreement in this case embodies a sophisticated and highly detailed "cost plus" pricing formula. This hardly renders the supply agreement unenforceable. Although the process is tedious, the product price is certainly ascertainable. As long as the parties agreed to a process by which price was to be determined and as long as the price could be ascertained at the time of performance, the price requirement for a valid and enforceable contract was satisfied. Morris v. Perkins Chevrolet, Inc., 663 S.W.2d 785, 787 (Mo. Ct. App. 1984); see also Mo. Rev. Stat. § 400.2-204(3). The supply agreement is valid because it specifies a standard that would establish the consideration after the product was manufactured. Therefore, it represents a valid and

enforceable contract, satisfying the first element required in this breach of contract claim.[3]

## 2. Parties' Obligations

Prepco next argues that Family Snacks failed to establish the true nature of the parties' respective obligations under the supply agreement as required under the second element of the breach of contract claim. Prepco claims the existence of an implied condition–that Family Snacks was first required to supply basic pricing information for the products it already manufactured before Prepco could obtain orders from its customers and place an order with Family Snacks. According to Prepco, Family Snacks' failure to provide pricing information hindered, and therefore excused, Prepco's performance under the supply agreement.

The crux of the disagreement between the parties is a dispute over which party had the initial obligation to provide information relevant to establishing prices for products under the agreed upon formula. Stated another way, did the contract contain an implied condition that Family Snacks had to first provide a product and price list to Prepco in order to demand Prepco's performance? Or was it Prepco's initial obligation to provide Family Snacks with the necessary ordering information so that Family Snacks could then quote Prepco a price for products? This issue is not answered by the language in the supply agreement. Thus, the parties apparently had no expectations regarding this situation and we must now supply the missing term. See Restatement (Second) of Contracts § 204.

---

[3]Family Snacks raises arguments of judicial estoppel and collateral estoppel as to Prepco's allegation that this contract is unenforceable. Because we find the contract valid and enforceable on its face, we need not address these issues.

We agree with the district court that as between the two parties, the supply agreement required Prepco to first provide Family Snacks with the description and quantity of product Prepco wished to buy before Family Snacks was obligated to give a price for the same.  In order to reach this result, we, like the district court, find section 400.2-204 of the Missouri Code instructive.  "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."  Mo. Rev. Stat. § 400.2-204(3).  In this case it is clear the parties intended to make a contract.  The supply agreement was negotiated in juxtaposition with the pending purchase agreement regarding Prepco's sale of the North Carolina facility to Family Snacks.  In fact, the purchase price for the facility, agreed upon by the parties in the purchase agreement, reflected a price reduction, which was to be recouped by Prepco through the implementation of a low-cost manufacturing arrangement.  The integration clause of the supply agreement itself evidences the parties' intention to make a contract.  Consequently, this contract does not now fail for indefiniteness due to lack of agreement on the issue now before the court.

Because we find that the supply agreement does not fail for indefiniteness, it is incumbent upon the court to supply the omitted term now at issue.  In a case such as this, where the four corners of the supply agreement fail to provide for the dispute at hand, the court must fill the gap.  See Restatement (Second) of Contracts § 204 ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.").  We find Missouri Statute § 400.2-311 instructive at this stage.  "Unless otherwise agreed[,] specifications relating to assortment of the goods are at the buyer's option . . . ."  Mo. Rev. Stat. § 400.2-311(2).  The comment to section 400.2-311(2) states:

> Options as to assortment of goods . . . are specifically reserved to the buyer . . . under subsection (2) where no other arrangement has been made. This section rejects the test which mechanically and without regard to usage or the purpose of the option gave the option to the party "first under a duty to move" and applies instead a standard commercial interpretation to these circumstances.

Mo. Rev. Stat. § 400.2-311 cmt. 2. Accordingly, section 400.2-311 places the responsibility upon Prepco to identify the products it wished to buy. Prepco's obligation is further evidenced by the pricing formula for all products sold to Prepco, which calculates charges based upon current costs of ingredients and manufacturing costs. This pricing mechanism only makes sense if these factors are applied to products ordered by Prepco in specific quantities on specific dates, whether currently manufactured products or special order products.[4]

---

[4]Prepco's evidence proffered in support of the proposition that it could not solicit and negotiate orders from its customers without knowing its costs is extraneous. Stated earlier, the clear and unambiguous language of the supply agreement in no way addresses the parties' responsibilities as to which comes first–the placement of an order or the pricing. This fact alone is instructive because if, as Prepco now claims, the pricing information was so essential that its absence would virtually immobilize their negotiations with possible customers regarding snack sales, then it likely would have been a point of contention at the negotiating table when the supply agreement was constructed. However, nothing in the integrated supply agreement addresses this issue and Prepco's claim is wholly outside of the contract and beyond consideration by the court. As such, we turn to basic principles of contract interpretation to fill the gap left by the parties, and find that, in fact, Prepco was responsible for first placing an order with Family Snacks.

### 3.    Breach and Damages

The supply agreement is a valid and enforceable contract that clarified the rights and obligations of the respective parties.  Prepco was obligated to select and purchase $10 million worth of products in the first year and yet undisputably failed to do so.  Thus, the breach requirement is satisfied.  Further, the parties contracted for damages in the supply agreement.  Family Snacks therefore established its claim for breach of contract as a matter of law.

### 4.    Post-discovery Declarations

Prepco also argues that the district court erred in refusing to consider the declarations of Lehmer and Otto Clements, a former Prepco employee, when it ruled on the motion for summary judgment.  Prepco claims there are factual disputes as to whether Family Snacks was required to provide a price for a specific package size and minimum quantity that could be ordered or produced, offering these declarations in support of that argument.  Because we have found as a matter of law that it was Prepco's obligation to first place an order with Family Snacks, this proffered evidence is irrelevant.

## III.    CONCLUSION

For the reasons set forth above, we affirm the district court.

A true copy.

   Attest:

   CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-