# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2142

_____

|   |   |   |
|---|---|---|
| Robert Baum, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Helget Gas Products, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 15, 2005
Filed: March 16, 2006

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Robert L. Baum sued his former employer, Helget Gas Products, Inc. ("HGP"), claiming breach of a three-year employment contract, or negligent and fraudulent misrepresentation of employment for three years. The district court granted HGP summary judgment, holding that Baum did not have a contract for a term of years, and alternatively, that HGP did not misrepresent the existence of a contractual guarantee. Baum appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

In January 2002, Baum met HGP's President, James F. Helget, and the St. Louis branch manager, Kenneth Bromeier, to discuss a sales position. Baum was then employed by a competitor, but worried it might soon stop operations. At the meeting, Baum informed Helget and Bromeier that he needed an employment contract before leaving his current position. He told Helget and Bromeier that he wanted a contract for at least three years as job security before changing employers at age 59. Throughout the meeting, Baum took detailed notes, itemizing the proposed salary, benefits, and job duties in years 2002, 2003, and 2004. He gave this handwritten paper to Helget at the end of the meeting.

After further negotiations and an employment test, HGP hired Baum as a salesman on February 25, 2002. Baum immediately reminded Helget that he needed a written employment agreement as soon as possible. Helget said he would have Baum's meeting notes typed up and signed. After a week's delay, Baum asked Bromeier to sign the original meeting notes. Bromeier agreed. He and Baum signed the paper on March 1, 2002, adding the words "contract with Helget Gas Products St. Louis Mo. Market" at the top of the handwritten page. As St. Louis branch manager, Bromeier had authority to sign for HGP. Although Baum and Bromeier drew a line for Helget's signature, he never signed the paper.

The final paper has three columns labeled 2002, 2003, and 2004. It says that, in 2002, Baum's salary is $39,150 with an additional bonus of $2,000; in 2003, he would receive a $43,150 salary and a $4,000 bonus; and in 2004, a $45,150 salary and a $6,000 bonus. It also provides that Baum is due a $2,000 increase in bonus each year after 2004, and that HGP would provide $9,600 each year to lease a vehicle and cell phone. As to the vehicle, HGP is to pay for or buy-out the lease if Baum is discharged "before contract expires." Finally, the paper provides for health insurance, vacation and sick leave, paid holidays, funeral leave, and an expense account.

Baum was the only salaried salesman at HGP in St. Louis. Baum testified he never received any performance expectations or goals to justify his salary, but was expected to service HGP's largest account (Anheuser Busch) and to bring in as many new customers as possible. He also stated that his supervisor told him that he was meeting HGP's expectations during his employment, as he was "doing everything he was asked."

Helget disagreed, pointing to another pre-employment document, a "letter of agreement" where Helget specified that he expected Baum to produce at least $1,000 in new business each month in order to justify his compensation. Baum did not sign the letter, and claimed never to have seen it. Helget testified he spoke with Baum several times about his failing sales performance, which was consistently below his monthly salary – far less than $1,000 new business each month. When Baum's sales performance did not improve (according to Helget), HGP terminated him on November 13, 2002.

Baum sued HGP for breach of contract, negligent misrepresentation, and fraudulent misrepresentation. HGP moved for summary judgment, asserting that the handwritten paper was not an employment contract for three years, and that HGP never represented it was. HGP thus concluded that Baum was an at-will employee subject to termination at any time. HGP also argued that no one told Baum he had a guaranteed employment term, and that Baum understood he had to perform to HGP's expectations in order to keep his job.

The district court granted HGP's motion, first holding that, while the handwritten paper could be construed as a contract, it was not an employment contract for a definite term of at least three years. Rather, the district court found that the paper merely specified Baum's salary if employed through 2004. Because the district court found the handwritten paper unambiguous, it refused parol evidence indicating Baum's requirement and understanding of employment for at least three years.

Additionally, the district court concluded that no one at HGP promised Baum employment for any period of time, defeating his negligent and fraudulent misrepresentation claims. Baum appeals.

II.

Baum first argues that the district court erred in granting summary judgment on the breach-of-contract claim. This court reviews the grant of summary judgment de novo, applying the same legal standards employed by the district court, and considering whether the district court correctly followed the applicable substantive law. *See Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 710-11 (8th Cir. 2004). The district court is affirmed if, viewing the evidence favorably to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004). Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial. *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2004). This court reviews the district court's interpretation of Missouri law de novo. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Riordan v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 416 F.3d 825, 829 (8th Cir. 2005).

Under Missouri law, "in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason." *Main v. Skaggs Cmty. Hosp*, 812 S.W.2d 185, 187-88 (Mo. App. 1991), *quoting Christy v. Petrus*, 295 S.W.2d 122, 124 (Mo. banc 1956). Unless the contract specifies the duration of employment or limits the reasons for discharge, either party may terminate the employment relationship at any time, with no liability for breach of contract. *See Luethens v. Wash. Univ*., 894 S.W.2d 169, 172 (Mo. banc 1995); *McCoy v. Spellman Mem.*

*Hosp*., 845 S.W.2d 727, 730 (Mo. App. 1993); *Panther v. Mr. Good-Rents, Inc.*, 817 S.W.2d 1, 3 (Mo. App. 1991).

Baum asserts that the signed, handwritten paper constitutes a valid three-year employment contract. While conceding it does not limit the reasons for discharge, he argues that it sets forth a duration of employment from February 2002 to December 2004.

HGP responds, and the district court agreed, that the paper only establishes Baum's projected salary and benefits over a three-year period, which is not a "contractual undertaking" to employ Baum for three years. *See Anselmo v. Mfrs. Life Ins. Co.* 595 F. Supp. 541, 547 (W.D. Mo. 1984), *aff'd*, 771 F.2d 417 (8th Cir. 1985). HGP invokes the Missouri cases holding that, if an employment document does not specify a duration, the relationship is at-will. *See Sturgis Equip. Co. v. Falcon Indus. Sales Co.*, 930 S.W.2d 14, 18 (Mo. App. 1996); *Kaskowitz v. Commerce Magazine, Inc.*, 793 S.W.2d 628, 631 (Mo. App. 1990) ("an indefinite hiring at so much per day, or per month, or per year, is a hiring at will, and may be terminated by either party at any time"), *quoting Campbell v. Sheraton Corp.*, 253 S.W.2d 106, 110 (Mo. 1952).

Whether the district court erred depends on whether the handwritten paper is ambiguous. Under Missouri law, summary judgment in a contract case is appropriate only where the contract language is so clear and unambiguous that the contract's meaning is readily apparent from the face of the document itself. *See Family Snacks of N.C., Inc. v. Prepared Prods. Co.*, 295 F.3d 864, 867 (8th Cir. 2002), *quoting Mo. Consol. Health Care Plan v. BlueCross BlueShield of Mo.*, 985 S.W.2d 903, 908 (Mo. App. 1999); *E.O. Dorsch Elec. Co. v. Plaza Constr. Co.*, 413 S.W.2d 167, 172-73 (Mo. 1967); *MECO Sys., Inc. v. Dancing Bear Entm't, Inc.*, 948 S.W.2d 185, 190-91 (Mo. App. 1997). Where the contract is textually ambiguous, a question of material fact exists as to the parties' intent, which is for a jury to resolve at trial. *Graham v. Goodman*, 850 S.W.2d 351, 354-56 (Mo. banc 1993); *Tuttle v. Muenks*,

21 S.W.3d 6, 9 (Mo. App. 2000); ***Busch & Latta Painting Corp. v. State Highway Comm'n***, 597 S.W.2d 189, 198 (Mo. App. 1980). *See **Anderson***, 477 U.S. at 247-48 (state substantive law identifies which facts are material for a motion for summary judgment).

The cardinal rule in contract interpretation is to ascertain and give effect to the true intent of the parties. *See **Lyster v. Ryan's Family Steak Houses, Inc.***, 239 F.3d 943, 946 (8th Cir. 2001), *quoting **Speedie Food Mart, Inc. v. Taylor***, 809 S.W.2d 126, 129 (Mo. App. 1991); ***J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club***, 491 S.W.2d 261, 264 (Mo. banc 1973). Unless the contract is ambiguous, the parties' intent is determined by the language of the contract alone, not extrinsic or parol evidence. ***Armstrong Bus. Servs., Inc. v. H & R Block***, 96 S.W.3d 867, 874 (Mo. App. 2002). That the parties disagree about the contract's interpretation does not, by itself, create an ambiguity. *See **Jim Carlson Constr., Inc. v. Bailey***, 769 S.W.2d 480, 482 (Mo. App. 1989). Rather, the test is "whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable average person." ***Speedie Food Mart***, 809 S.W.2d at 129. *See also **Farmland Indus., Inc. v. Frazier-Parrott Commodities***, 111 F.3d 588, 590 (8th Cir. 1997), *citing **Coughenour v. Bates***, 785 S.W.2d 291, 297 (Mo. App. 1990).

In this case, the contract language is reasonably susceptible to more than one construction. While the handwritten paper itemizes Baum's salary and benefits for 2002, 2003, and 2004, it is also clearly labeled "contract with Helget Gas Products" and contemplates HGP buying out the 39-month lease on Baum's company vehicle if there is "discharge before contract expires." Additionally, it states that HGP will pay Baum's "medical insurance for term of contract," and that Baum will receive "$2,000 each year after, increase in qtr. bonus after yr. 2004." Though HGP argues that these clauses merely set forth estimated projections if Baum is employed through 2004, the language is also susceptible to Baum's interpretation that it establishes a contract term

from February 2002 through December 2004.  As the contract is textually ambiguous, creating a genuine issue of material fact, the district court erred in granting summary judgment to HGP.  *See Graham*, 850 S.W.2d at 354-56.

## III.

Baum next argues that the district court erred in granting summary judgment on the claims for negligent and fraudulent misrepresentation.  Baum pled in the alternative: (1) HGP knowingly led him to believe he had a three-year deal with no intent to honor it, or (2) Bromeier negligently represented to Baum that HGP would employ him for at least three years.  Rejecting these arguments, the district court, focusing on Baum's admissions, decided that he could not establish a misrepresentation.  This court reviews that decision de novo, applying the same legal standards as the district court and viewing the evidence most favorably to Baum, the non-moving party.  *See Koscielski v. City of Minneapolis*, 435 F.3d 898, 900 (8th Cir. 2006).

To maintain a claim for negligent misrepresentation, Baum must establish that, due to a failure to exercise reasonable care, HGP made false statements that he justifiably relied upon to his detriment.  *See Collins v. Mo. Bar Plan*, 157 S.W.3d 726, 734 (Mo. App. 2005), *quoting Colgan v. Wash. Realty Co.*, 879 S.W.2d 686, 689 (Mo. App. 1994); *Hamra v. Magna Group, Inc.*, 956 S.W.2d 934, 939-40 (Mo. App. 1997).  A negligent misrepresentation claim cannot arise solely from evidence that the defendant did not perform according to a promise or statement of future intent.  *See Urologic Surgeons, Inc. v. Bullock*, 117 S.W.3d 722, 726 (Mo. App. 2003); *Hoag v. McBride & Sons Inv. Co.*, 967 S.W.2d 157, 174 (Mo. App. 1998) ("it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions").

The elements of fraudulent misrepresentation and negligent misrepresentation are very similar, with two main differences. For fraudulent misrepresentation, Baum must establish that HGP intentionally or recklessly made false statements in order to induce his employment, which he reasonably relied upon to his detriment. *See **Volker Court, LLC v. Santa Fe Apartments, LLC***, 130 S.W.3d 607, 612 (Mo. App. 2004), *citing **Gast v. Ebert***, 739 S.W.2d 545, 547 (Mo. banc 1987). Unlike negligent misrepresentation, "a promise accompanied by a present intent not to perform is a misrepresentation sufficient to constitute fraud." ***Id.***, *quoting **Carlund Corp. v. Crown Ctr. Redevelopment Corp.***, 910 S.W.2d 273, 279 (Mo. App. 1995); *see also **Sofka v. Thal***, 662 S.W.2d 502, 507 (Mo. banc 1983); ***O'Neal v. Stifel, Nicolaus & Co.***, 996 S.W.2d 700, 704 (Mo. App. 1999).

The key to both misrepresentation claims is whether HGP made materially false statements to Baum about the duration of his employment. While Baum asserts that, during negotiations, both Helget and Bromeier led him to believe that HGP would employ him for at least three years, he admitted in his deposition that the parties never discussed how long his employment would last. He also affirmatively testified that no HGP representative made a misrepresentation to him during the negotiations:

> Q: During the course of discussions that you had with Mr. Helget and Mr. Bromeier prior to your beginning employment with Helget Gas Products, do you believe that any representative of Helget Gas Products lied to you or misrepresented anything to you?
>
> A: Not to my knowledge.

Finally, Baum admitted that he had no reason to believe that HGP did not intend to abide by the handwritten paper when it was negotiated or signed.

These admissions are fatal to Baum's misrepresentation claims, as they establish that no one at HGP made a materially false statement to Baum about the duration of

his employment – a necessity for both negligent and fraudulent misrepresentation. If, as Baum admits, the parties never discussed the length of employment, HGP never promised Baum a three-year employment guarantee during the course of negotiations (other than in the ambiguous handwritten paper, as discussed above). *See O'Neal*, 996 S.W.2d at 702-03, *citing **Bernoudy v. Dura-Bond Concrete Restoration, Inc.***, 828 F.2d 1316, 1318 (8th Cir. 1987) ("A fraud claim is permitted only if it arises from acts that are separate and distinct from the contract"). *See also **Deschler v. Brown & Williamson Tobacco Co.***, 797 F.2d 695, 697 (8th Cir. 1986), *citing **Gen. Dynamics Corp. v. Selb Mfg. Co.***, 481 F.2d 1204, 1216 (8th Cir. 1973) (same, applying Missouri law). At best, Baum's evidence shows that the parties' negotiations implied a three-year relationship, which HGP did not fulfill. This is insufficient to establish either negligent or fraudulent misrepresentation. As Baum admits he believed HGP intended to abide by the handwritten paper when it was negotiated and signed, and did not believe that anyone at HGP lied to him during negotiations, he cannot establish the requisite "promise accompanied by a present intent not to perform" for fraudulent misrepresentation. *See **Volker Court***, 130 S.W.3d at 612. Similarly, as to negligent misrepresentation, the evidence shows only that HGP did not perform according to a promise (if made), which is insufficient. *See **Urologic Surgeons***, 117 S.W.3d at 726. Accordingly, this court affirms the summary judgment to HGP on both misrepresentation claims.

IV.

The judgment of the district court is affirmed in part, reversed in part, and the case remanded.

_____